**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
EMANUEL SUVILL and RASHAN
BESWICK individually and on behalf of
other persons similarly situated who were
employed by BOGOPA SERVICE CORP.
d/b/a FOOD BAZAAR and FOOD
DIMENSIONS, HWEE III AM, or any
other entities affiliated with or controlled
by BOGOPA SERVICE CORP. and/or
HWEE III,

                                   Plaintiffs,

       -against-

BOGOPA SERVICE CORP. d/b/a FOOD
BAZAAR and FOOD DIMENSIONS,
HWEE III AM or any other entities affiliated
with or controlled by BOGOPA SERVICE
CORP. and/or HWEE III AM,

                                  Defendants.
-----------------------------------------------------------X

**REPORT & RECOMMENDATION**

11-CV-3372 (SLT) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

**TO THE HONORABLE SANDRA L. TOWNES,
UNITED STATES DISTRICT COURT JUDGE**

## INTRODUCTION

Emanuel Suvill ("Suvill") and Rashan Beswick ("Beswick") (collectively, "Plaintiffs") commenced this action against Bogopa Service Corp. d/b/a Food Bazaar and Food Dimensions, and Hwee III Am (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and purported class action under New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, §142–2.2 *et seq*. Subsequently, other plaintiffs consented to join the action. (Dkt. Nos. 7, 14, 19, 21-22, 24.) The

Court conditionally certified this matter as a collective action pursuant to 29 U.S.C. § 216(b) on January 20, 2012, and authorized Plaintiffs to distribute notice at seven Food Bazaar locations in New York City. (Dkt. No. 27; Dkt. Entry dated 2/22/2012.) Two plaintiffs have opted-in to the collective action since conditional certification. (Dkt. Nos. 30, 36.)

Plaintiffs now move for certification of their NYLL claims under FED. R. CIV. P. 23. (Dkt. Nos. 42, 44.) Your Honor referred Plaintiffs' motion to me for a Report and Recommendation. (Dkt. No. 49.) The Court held a hearing on Plaintiffs' motion on July 2, 2013. (Dkt. Entry dated 7/02/2013.) For the reasons that follow, I respectfully recommend that Plaintiffs' motion be granted as modified herein.

## BACKGROUND

Plaintiffs claim that they were employed by Defendants to work outside of Food Bazaar supermarkets. (Dkt. No. 41, Decl. of LaDonna Lusher in Supp. of Mot. for Class Certification ("Lusher Decl."), Exh. A (Decl. of Emanuel Suvill ("Suvill Decl.")) ¶ 2; Lusher Decl., Exh. B (Decl. of Rashan Beswick ("Rashan Decl.")) ¶ 2.) Plaintiffs were scheduled to work eight-hour shifts, five to seven times a week. (Suvill Decl. ¶ 3; Rashan Decl. ¶ 2.) As part of their responsibilities, Plaintiffs helped customers carry and load their groceries, removed snow and ice, cleaned the outdoor platforms and parking lots, assisted security personnel, took deliveries, cleaned debris and trash, and collected shopping carts. (*Id.* ¶ 2.)

Suvill worked at Defendants' Wyckoff Avenue location, (Suvill Decl. ¶ 2), and Beswick worked at Defendants' Wyckoff Avenue, Manhattan Avenue, Gates Avenue, and 161 Street–Grand Concourse locations (Rashan Decl. ¶ 2). The opt-in plaintiffs worked at Defendants' Wyckoff Avenue, Myrtle Avenue, St. John's Place, and Gates Avenue locations.

(Lusher Decl., Exh. C (Decl. of Eduardo Hernandez ("Hernandez Decl.")) ¶ 2; Lusher Decl., Exh. D (Decl. of Rashid Beswick ("Rashid Decl.")) ¶ 2; Lusher Decl., Exh. E (Decl. of Peter T. Crowley ("Crowley Decl.")) ¶ 2; *see also* Dkt. No. 25-1 at 2; Dkt. No. 25-3 at 2; Dkt. No. 25-4 at 2; Dkt. No. 25-5 at 2.) Plaintiffs also indicate that there were similarly situated employees at Defendants' New Lots Avenue location. (Dkt. No. 25-5 at 3.)

Plaintiffs claim that during their employment with Defendants they were compensated only by customer gratuities. (Suvill Decl. ¶ 13; Rashan Decl. ¶ 16.) Suvill and Michael Rivera noted that they also received holiday cash bonuses or seasonal goods such as turkeys at Thanksgiving and wine or brandy at Christmas. (Dkt. No. 25-5 at 2; Dkt. No 25-6 at 324.) Plaintiffs estimate that there are between fifty and one hundred workers, employed at fifteen stores in New York, New Jersey, and Connecticut, who performed similar tasks for Defendants and were also not paid any wages for their work. (Lusher Decl. ¶ 3.)

Plaintiffs aver that they represent a putative class, and move for certification under FED. R. CIV. P. 23. (Dkt. Nos. 40-43, 45.) Defendants object to Plaintiffs' motion for class certification, claiming, among other things, that Plaintiffs were not Defendants' employees, and that even if Plaintiffs were employees, they fail to meet the Rule 23 requirements. (Dkt. No. 44.)

## DISCUSSION

### I. Rule 23 Class Certification

Plaintiffs move for Rule 23 class certification of their state law unpaid wage and unpaid overtime compensation claims. Plaintiffs' motion seeks to certify a class of:

> All individuals who performed work at the entrances, on outdoor platforms and around the exterior perimeter [*sic*] Food Bazaar locations, performing tasks that include and are not limited to:

> helping customers with their groceries, removing snow and ice, cleaning the platform and parking lots, assisting security personnel, taking deliveries, cleaning debris and trash, and collecting shopping carts, from February 22, 2006 through the present. This does not include supervisors, officers, executive, managerial, or administrative personnel.

(Dkt. No. 42, Pls.' Mem. in Supp. of Their Mot. for Class Certification ("Pls.' Mem.") at 5.)

When deciding whether to certify, "the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Plaintiffs bear the burden of establishing all Rule 23 requirements by a preponderance of the evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *In re Zyprexa Prods. Liab. Litig. ("In re Zyprexa")*, 253 F.R.D. 69, 192 (2d Cir. 2010) ("Rule 23 requirements are threshold issues; a district court must make a ruling or a determination (not a finding) as to whether they are met."). Courts must conduct a "rigorous analysis" to determine whether the relevant Rule 23 requirements have been met. *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)); *see also Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).

Where disputed issues of fact implicate Rule 23 issues, it is the plaintiffs' burden to prove that those facts are established. *In re Initial Pub. Offering Secs. Litig. ("In re IPO")*, 471 F.3d 24, 41 (2d Cir. 2006) ("[The Court must] receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met."). "A motion for class certification should not, however, become a mini-trial on the merits." *Katz v. Image Innovations Holdings, Inc.*, 06-CV-3707 (JGK), 2010 WL 2926196, at *2 (S.D.N.Y. Jul. 22, 2010) (citing

*Eisen*, 417 U.S. at 177-78); *see Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

"The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' . . . and 'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361-62 (E.D.N.Y. 2009) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)); *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 244 (E.D.N.Y. 2012); *see also Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 104 (E.D.N.Y. 2011) ("The Second Circuit . . . has shown a preference for granting rather than denying class certification.") (quotations omitted). "[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 249 (S.D.N.Y. 2010) (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968), *cert. denied*, 395 U.S. 977 (1969)).

Further, "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 104 (E.D.N.Y. 2011) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-203 (S.D.N.Y. 2006)).

A. Rule 23(a) Requirements and the Implied Requirement of Ascertainability

Before a class can be certified, the following Rule 23(a) prerequisites must be established: "(1) numerosity, (2) commonality, (3) typicality, and (4) fair and adequate representation of the class." *Gortat v. Capala Bros.*, No. 07-CV-3629 (ILG) (SMG), 2009 WL 3347091, at *2 (E.D.N.Y. Oct. 16, 2009), *report and recommendation adopted,* 2010 WL 1423018 (Apr. 9, 2010) (citing *Marisol A.*, 126 F.2d at 375-76); *see also D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120 (JG) (RER), 2013 WL 3010810, at *18 (E.D.N.Y. Jun. 18, 2013) (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997)).

Additionally, while Rule 23(a) does not expressly require that a class be definite to be certified, "[t]here is an implied requirement that the membership of the class is identifiable and ascertainable." *Jankowski v. Castaldi*, No. 01-CV-0164 (SJF) (KAM), 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006) (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. ("In re MTBE")*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002)); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139-40 (S.D.N.Y. 2012); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 305 (S.D.N.Y. 2010).

i. *Numerosity*

The class must be so numerous that joinder of all members is impracticable. *See, e.g., Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007) ("the difficulty or inconvenience of joining all members of the class make use of the class action appropriate"). "Impracticability means difficulty or inconvenience of joinder [not] . . . impossibility of joinder." *Dupler v. Costco Wholesale Corp.*,

249 F.R.D. 29, 36 (E.D.N.Y. 2008) (citing *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999)).

Numerosity is "presumed at a level of 40 members" but "will not be satisfied when the class comprises 21 or fewer." *Compare Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted)*, with Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998); *but see Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certifying class of 15 in FLSA action where members were unlikely to bear the costs of individual lawsuits). Nevertheless, "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993).

As such, the "relevant considerations [a court may consider] include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id*. at 936 (citations omitted); *Assif v. Titleserv, Inc.*, 288 F.R.D. 18, 23 (E.D.N.Y. 2012); *see also Gortat v. Capala Bros.*, No. 07-CV-3629 (ILG) (SMG), 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3, 2012).

Plaintiffs need not show evidence of a precise class size. *Robidoux*, 987 F.2d at 935. However, "[w]here the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails." *Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 84 (E.D.N.Y. 2001).

Plaintiffs approximate a class size of "upward of 100" outdoor workers who were compensated only with tips. (Pls.' Mem. at 10.) This figure is supported by affidavits providing

7

the following observational staffing estimates for Defendants' stores: (a) Wyckoff Avenue, 8-12 employees daily, 20-25 employees during the relevant period (Suvill Decl. ¶¶ 8-9; Rashan Decl. ¶ 7; Dkt No. 25-1 ¶ 2; Hernandez Decl. ¶ 9; Rashid Decl. ¶ 9; Dkt. No. 25-1 at ¶ 12; Dkt. No. 25-3 ¶ 11; Dkt. No. 25-4 ¶ 14; Dkt. No 25-5 ¶ 11); (b) Gates Avenue, 6-12 employees daily, 20-25 employees during the relevant period (Hernandez Decl. ¶ 12; Crowley Decl. ¶ 11; Dkt. No. 25-5; ¶ 19); (c) Manhattan Avenue, 6-8 employees daily (Rashan Decl. ¶ 12); (d) 161st Street–Grand Concourse , 12-15 employees (Rashan Decl. ¶ 11); (e) St. John's Place, 8-12 employees daily (Dkt. No. 25-4 ¶ 14; Dkt. No 25-5 ¶ 19); and (f) Myrtle Avenue, 8-12 employees daily (Crowley Decl. ¶ 11; Dkt. No. 25-5, ¶ 19). Plaintiffs do not provide workforce estimates for Defendants' New Lots Avenue location.

Based on these affidavits, the Court is entitled to draw a "reasonable inference" that the putative class size is forty to fifty employees at the seven locations identified above. *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11-CV-6784 (WHP), 2013 WL 2495140, at *15 (S.D.N.Y. June 11, 2013) (citing *Alcantara v. CAN Mgmt., Inc.*, 264 F.R.D. 61, 64-65 (S.D.N.Y. 2009)). This excludes Plaintiffs' estimates for the Manhattan Avenue and 161st Street–Grand Concourse locations, because the evidence offered for those stores is based on observations occurring outside of the applicable statute of limitations. This is not to say that putative class members were not employed at those locations, or at New Lots Avenue, but rather that any staffing approximations for these stores would be sheer speculation at this stage of the case.

Additionally, Defendants' argument regarding the amount of opt-in plaintiffs is not relevant to a Rule 23 determination because the numerosity requirement considers the size of the proposed class, not the size of the collective action. *See Guan Ming Lin v. Benihana N.Y. Corp.*,

8

No. 10-CV-1335 (RA) (JCF), 2012 WL 7620734, at *4 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted*, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013); *see also Niemic v. Ann Bendick Realty*, No. 04-CV-847 (ENV) (KAM), 2007 WL 5157027, at *6 (E.D.N.Y. Apr. 23, 2008) (finding numerosity despite only ten opt-in plaintiffs).

  ii. *Commonality*

  A party seeking class certification must show that their claims depend on a common question of "such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. Commonality determinations for the purpose of Rule 23 certification have "become stricter" in light of the Supreme Court's recent decision in *Dukes*. *Flores v. Anjost Corp.*, 284 F.R.D. 112, 125 (S.D.N.Y. 2012). Nevertheless, "[t]he weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases." *Id.* (citing *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases)); *see also Reid v. SuperShuttle Int'l, Inc.,* No. 08-CV-4854 (JG) (VVP), 2012 WL 3288816, at *4 (E.D.N.Y. Aug. 10, 2012) ("[Common questions] include . . . whether [defendant's] compensation policies violated the FLSA or the NYLL"); *Poplawski v. Metroplex on the Atl., LLC*, 11-CV-3765 (JBW) (RER), 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2011).

  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Lewis v. Alert Ambulette Serv. Corp.*, 11-CV-442 (JBW) (JMA), 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012) (citing *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y.2004)). "Commonality may be met even though class members' individual circumstances differ, so long

9

as their 'injuries derive from a unitary course of conduct.'" *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quoting *Noble*, 224 F.R.D. at 338); *but see Wang v. Hearst Corp.*, No. 12-CV-793 (HB), 2013 WL 1903787, at *7 (S.D.N.Y. May 8, 2013) (finding a lack of commonality based on evidence of a "corporate-wide policy of classifying the proposed class members as unpaid" where "internships varied greatly from magazine to magazine"); *White v. W. Beef Props., Inc.*, No. 07-CV-2345 (RJD) (JMA), 2011 WL 6140512, at *5 (E.D.N.Y. Dec. 9, 2011) (finding a lack of commonality because the "evidence span[ned] nine different departments—Meat, Produce, Frozen, Fish, Grocery, Bakery, Deli, Dairy and Receiving—each of which has a distinct set of concerns and job duties").

Despite defendants' arguments to the contrary, Plaintiffs meet the commonality requirement. Named Plaintiffs allege that during the relevant six-year period they were subject to Defendants' unlawful policy of compensating them solely through customer tips. Several opt-in plaintiffs, who performed job duties similar to Suvill and Beswick, also as outdoor employees, testified to the same policy at their depositions. Where employees claim that their employers have unlawfully denied them minimum wages or overtime wages to which they were legally entitled, those workers meet the commonality prerequisite for class certification. *See D'Arpa*, 2013 WL 3010810, at *20.

Moreover, the proposed class members did not work for different departments or perform significantly different tasks as in *White* or *Wang*. That some class members worked different schedules than others does not implicate a commonality determination, but instead goes to damages. *Noble*, 224 F.R.D. at 343. Additionally, Defendants advance a common defense—that Plaintiffs and the putative class members were not their employees.

Finally, nothing in *Dukes* is inconsistent with the Court's finding with respect to commonality in the context of a wage and hour case. *Accord Meyer v. U.S. Tennis Ass'n*, No. 11-CV-6268 (ALC) (MHD), 2013 WL 1777556, at *7 (S.D.N.Y. Apr. 25, 2013); *Espinoza*, 280 F.R.D. at 129-130 (S.D.N.Y. 2011) (finding *Dukes* "inapposite" to wage and hour class claim). A determination that Food Bazaar did, or did not, maintain an unlawful wage policy as to these workers will resolve an issue central to all class members' claims under the same New York State statutes and regulations.

      *iii*.    <u>Typicality</u>

"Typicality . . . requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol A.*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (quotation omitted). The typicality inquiry is related to the commonality inquiry, but while "the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions." *In re Frontier Ins. Grp., Inc. Secs. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997).

The named plaintiffs' minimum wage and overtime claims are similar to those of the putative class: they arise from the same alleged policy of compensating outdoor employees only through customer tips in violation of the NYLL. (Pls.' Mem. at 16.) And even though the putative class members' work schedules differed, they all performed similar tasks as outdoor

11

service employees during their respective shifts. Finally, although Defendants assert that Suvill held a management position, his deposition testimony reveals that his responsibilities did not vary from those of his fellow outdoor employees, and that he did not have any disciplinary or termination authority. (Lusher Decl., Exh. F at 90:8-92:17.)

        iv.       *<u>Adequate Representation</u>*

Finally, the Court must rule as to whether "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Court will consider whether "1) plaintiff's interests are antagonistic to the interests of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000).

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc.*, 521 U.S. at 625-26 (internal quotations omitted). Determining adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625. Only a fundamental conflict will defeat the adequacy requirement. *Schwab v. Philip Morris*, 449 F. Supp. 2d 992, 1107 (E.D.N.Y. 2006), *rev'd on other grounds by McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2008) ("representative plaintiffs must not have interests that are antagonistic to or in conflict with those of the class as a whole").

As an initial matter, proposed class counsel is experienced in class actions, labor and employment law, and wage suits in particular. (Lusher Decl. ¶ 4 (collecting cases)). Defendants do not challenge the qualifications of Plaintiffs' class counsel.

As for the named plaintiffs, Suvill and Beswick submit that they wish to represent their colleagues in this action to recover overtime wages owed to them for the work they performed for Defendants. Defendants argue that the named plaintiffs' "own interest will lie with demonstrating their own employment status" and that "evidence seems to suggest, it is possible that a determination could be made that lead plaintiff Suvill, and not [Defendants], actually employed the other plaintiffs and presumably the proposed class members." (Dkt. No. 44 at 18.) However, the differences Defendants identify do not undermine Plaintiff's common claims, namely, that they were compensated only in tips. Additionally, Suvill's purported management position does not place him at odds with the putative class' claims. As discussed above, Suvill's actual responsibilities mirrored those of the other outdoor employees, and will not give rise to any interest that would conflict with the class as a whole.

     v.     *Ascertainability*

"[T]he courts have added an 'implied requirement of ascertainability' to the express requirements of Rule 23(a)." *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 97 (S.D.N.Y. 2009) (quoting *In re IPO Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of N.Y.*, 282 F.R.D. 360, 373 (S.D.N.Y.2012) (internal quotation marks omitted).

"[T]he ascertainability requirement means that the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Stinson*, 282 F.R.D. at 373 (quotations and citation omitted). The standard for ascertainability "is not demanding." *Gortat*, 2010 WL 1423018, at *2. "It is designed only to prevent the certification of a class whose membership is truly indeterminable." *Id.*

Here, the proposed class is not ascertainable. By naming "[a]ll individuals who performed work" around the exterior of Defendants' supermarket locations, Plaintiffs' putative class likely covers numerous non-aggrieved individuals such as Food Bazaar customers or unionized service employees.

However, a district court "is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993) (quoting *Robidoux*, 987 F.2d at 937). I therefore respectfully recommend narrowing the Plaintiffs' class definition as follows, thereby identifying an ascertainable class:

> All individuals who performed work **for the Defendants** at the entrances, on outdoor platforms and around the exterior perimeter **of** the Food Bazaar locations **at Wyckoff Avenue (Brooklyn), St. John's Place (Brooklyn), Gates Avenue (Brooklyn), Myrtle Avenue (Brooklyn), New Lots Avenue (Brooklyn), Manhattan Avenue (Brooklyn) and 161st Street–Grand Concourse (Bronx)**, performing tasks that include and are not limited to: helping customers with their groceries, removing snow and ice, cleaning the platform and parking lots, assisting security personnel, taking deliveries, cleaning debris and trash, and collecting shopping carts, from **July 13, 2005** through the present, **and were not paid minimum wage or overtime wages**. This does not include supervisors, officers, executive, managerial, **unionized employees** or administrative personnel.

(emphasis added to reflect the Court's recommended revisions).[1]

---

[1] At the motion hearing, Plaintiffs withdrew the portion of their motion seeking to certify the claims of class members employed at Defendants' New Jersey and Connecticut locations. (Dkt. No. 50, 7/02/2013 Hr'g Tr. at 3:8-10.) Additionally, Plaintiffs sought to amend the starting date for the claims period from February 22, 2006 to July 13, 2005, six years before the filing of the complaint. (*Id.* at 4:3-7.)

B.  Rule 23(b) Requirements

Plaintiffs must also meet the Rule 23(b)(3) prerequisites, under which a class may be certified if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED. R. CIV. P. 23(b)(3); *see Falcon*, 457 U.S. at 161.

   i.  *Predominance*

"[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citations omitted); *accord Moore*, 306 F.3d at 1252 ("Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof.").

"When determining whether common questions predominate, courts focus on whether questions of liability are common to the class members." *Poplawski*, 2012 WL 1107711, at *10. "In the majority of wage cases, 'if plaintiffs establish that defendant had a practice or policy of failing to pay prevailing wages, defendant's liability to all class members will be established.'" *Id.* at *10 (citing *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011)).

The Court finds that common questions of law and fact predominate regarding the legality or illegality of Defendants' wage practices and policies. That the Court may be required

15

to engage in specific findings to determine what wages, if any, an individual plaintiff is entitled to, does not eliminate predominance even when putative class members "earned [] wages at different rates, [or] some worked more hours than others." *Ramos*, 796 F. Supp. 2d at 359; *see also Lewis*, 2012 WL 170049, at *13 ("[D]ifferences among class members as to the number of hours worked, the precise work they did and the amount of pay they received concern the amount of damages to which any individual class member might be entitled, not the amenability of their claims to Rule 23 certification.") (citing *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 49 (E.D.N.Y. 2010)).

        ii.    <u>*Superiority*</u>

Rule 23(b)(3) requires Plaintiffs to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "[A] class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation and many potential class members are currently employed by Defendant." *Garcia*, 281 F.R.D. at 107-108 (citing *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (collecting cases)). When determining whether certification of a class satisfies Rule 23(b)(3)'s superiority requirement, a court must consider whether "[t]rying [the] action collectively allows for a more cost-efficient and fair litigation of common disputes than requiring each plaintiff to prosecute his or her own individual action." *Poplawski*, 2012 WL 1107711, at *11 (internal quotations omitted) (citing *Garcia*, 281 F.R.D. at 108).

Proceeding as a class is the most efficient manner of resolving Plaintiffs' common claims as to Defendants' allegedly unlawful wage policy. At the motion hearing, Plaintiffs' counsel also

outlined a process for brief evidentiary proceedings that would allow for streamlined determination of individual claims in the event that Plaintiffs meet their burden of proof as to Defendants liability for wage and hour violations. (Dkt. No. 50, 7/02/2013 Hr'g Tr. at 30:20-31:1-5.) That such a process might involve a special master or referee does not weigh against certification. *See U.S. v. City of New York*, 276 F.R.D. 22, 50 (E.D.N.Y. 2011) ("[A] special master is one of the tools available to the court to make class actions more manageable.") (citing *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006) ("[T]here are a number of management tools available to a district court to address any individualized damages issues, such as bifurcation, the use of a magistrate or special master, alteration of the class definition, the creation of subclasses, or even decertification after a finding of liability.")).

Moreover, despite sizable damage estimates for eight of the plaintiffs, other class members may have smaller claims based on shorter periods of employment. These smaller claims may disincentivize individual plaintiffs from filing suit due to the "burden and cost of vast and complex litigation." *Lewis,* 2012 WL 170049, at *15 (citing *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 158 (S.D.N.Y. 2002)).

Additionally, there are allegations that certain of Defendants' employees have been "pressured to sign [] statements" out of fear of retaliation. (Dkt. No. 25-10 at 1.) Certification of an opt-out class would provide a means for any class member still employed by Defendants to participate in the remedy without necessitating joinder. *Trinidad v. Breakaway Courier Sys., Inc.*, 05-CV-4116 (RWS), 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) ("[T]he concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable.") (citing *Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 89 (E.D.N.Y. 1989)).

While it is unclear if Defendants continue to employ outdoor workers compensated solely by customer tips, the proposed class definition includes current employees, and such employees may be reluctant to bring their own actions for fear of reprisal.

Finally, given that Plaintiffs' "New York Labor Law claims are nearly identical to the FLSA claims," the collective resolution of all the issues in the same court is preferable to resolving dozens of separate lawsuits in state court. *Garcia*, 281 F.R.D. at 108 (internal citations and alterations omitted) (citing *Alonso v. Uncle Jack's Steakhouse, Inc.*, 08-CV-7813 (DAB), 2011 WL 4389636, at *5 (S.D.N.Y. Sept. 21, 2011)).

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that Plaintiffs' motion for class certification be granted as modified by the Court in Section I.A.v of this Report and Recommendation.[2]

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Sandra L. Townes within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**Dated: August 12, 2013**
**Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**

---

[2] All individuals who performed work for the Defendants at the entrances, on outdoor platforms and around the exterior perimeter of the Food Bazaar locations at Wyckoff Avenue (Brooklyn), St. John's Place (Brooklyn), Gates Avenue (Brooklyn), Myrtle Avenue (Brooklyn), New Lots Avenue (Brooklyn), Manhattan Avenue (Brooklyn) and 161st Street–Grand Concourse (Bronx), performing tasks that include and are not limited to: helping customers with their groceries, removing snow and ice, cleaning the platform and parking lots, assisting security personnel, taking deliveries, cleaning debris and trash, and collecting shopping carts, from July 13, 2005 through the present, and were not paid minimum wage or overtime wages. This does not include supervisors, officers, executive, managerial, unionized employees or administrative personnel.